IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| AVONTE LESHAY SMITH, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:26CV399 (RCY) |
| | ) | |
| TMG RICHMOND IV, LP, | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION**

On May 8, 2026, Plaintiff Avonte Leshay Smith, appearing *pro se*, submitted an application to proceed *in forma pauperis* ("IFP Application"), along with a proposed Complaint and an Emergency Motion for Temporary Restraining Order ("TRO"). IFP Appl., ECF No. 1; Proposed Compl., ECF No. 1-1; Em. Mot. TRO ("TRO Mot."), ECF No. 1-5. Upon review of Plaintiff's IFP Application, the Court is satisfied that Plaintiff qualifies for *in forma pauperis* status. Accordingly, the Court will grant Plaintiff's IFP Application. The Court FINDS, however, that the preliminary relief sought by Plaintiff is unavailable and thus the Court must deny the TRO Motion (ECF No. 1-5). The Court will also deny Plaintiff's subsequently filed Emergency Motion for Contempt and Spoilation of Evidence (ECF No. 4), as that Motion misinterprets the Court's previously issued Order.

## I. PROCEDURAL HISTORY RELATING TO THE TRO MOTION

Concurrent with the submission of her IFP Application and Complaint, Plaintiff sought emergency relief ordering Defendants to allow her to retrieve critical medication and other personal property from her apartment following eviction-related lockout. TRO Mot., ECF No. 1-5. Plaintiff also requested that the Court "restore [Plaintiff's] possession of [the] premises."

*Id.* In light of the potential medical emergency presented in Plaintiff's filing, the Court conducted an emergency status hearing with the parties the afternoon of May 8, 2026, and at that time, *while reserving judgment on Plaintiff's various requests for relief*,[1] obtained Defendant's consent to Plaintiff retrieving her medication and other personal belongings from her apartment that same afternoon. Order, ECF No. 3. Having thus resolved the most critical emergency before it, the Court forecasted turning to the balance of the issues raised in Plaintiff's Complaint and TRO Motion in due course. *Id.*

## II. ANALYSIS OF MOTIONS

### A. Emergency Motion for Contempt and Spoilation of Evidence

Although it was the most recently filed item, the Court addresses Plaintiff's Emergency Motion for Contempt and Spoilation of Evidence first. Therein, Plaintiff challenges the fact that Defendants "altered the status quo, charged unauthorized lease termination/cleaning fees, and removed [Plaintiff's] personal property," purportedly constituting contempt of the Court's May 8 Order and "spoliation of evidence necessary for [her] civil rights claims." Em. Mot. 1, ECF No. 4. Although Plaintiff demands sanctions against Defendant for "disobeying a federal order," *id.*, all that the Court ordered on May 8 was that, as agreed between the parties, Plaintiff should be allowed to access her unit to collect her necessary medications and personal property. Order, ECF No. 3. The Court explicitly reserved ruling on Plaintiff's TRO on May 8. *Id.* The simple fact that Plaintiff had filed for TRO relief did not impose any obligation on Defendant to act to preserve the status quo or otherwise refrain from proceeding with its standard eviction

---

[1] It is this aspect that Plaintiff overlooks. *See* Em. Mot., ECF No. 1-9. Although the Court endeavored to negotiate an equitable avenue for emergency relief for Plaintiff, Defendant validly raised concerns regarding the Court's jurisdiction over claims related to the state eviction proceedings, and so the Court did not, at that time, order anything beyond what the parties had agreed: that Plaintiff would be allowed limited access to her apartment to recover essential medications and other personal property.

processes. And, for the reasons discussed below, this Court is not authorized to grant Plaintiff the requested stay of eviction, regardless, and so it finds no legally cognizable harm to Plaintiff in Defendant's actions.

Plaintiff's claims of spoliation likewise are without merit. "[T]he physical state of [the] apartment" is not reasonably related to Plaintiff's claims as presented in the Complaint, and the Court does not find Defendant's act of clearing the apartment in accordance with its noticed eviction procedures[2] to constitute spoliation in this case.

The Court will accordingly deny the Emergency Motion.

## B. Motion for Temporary Restraining Order

A TRO is an extraordinary remedy that "may never be obtained as a matter of right." 11A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2948 (3d ed. 2002). Thus, the party who moves for a TRO bears the burden to "clearly establish[]" all four of the so-called *Winter* factors: the likelihood of irreparable harm to the movant if the TRO is denied; that the balance of the equities tips in the movant's favor; the likelihood that the movant will succeed on the merits; and that the public interest is furthered by a TRO. *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017) (citing *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008)). The moving party must also certify "in writing any efforts made to give notice [to the nonmoving party] and the reasons why it should not be required" before a Court can grant a TRO. Fed. R. Civ. P. 65(b)(1)(B).

As a preliminary matter, the Court observes that Plaintiff attests to having satisfied Rule 65(b)(1)(B)'s notice requirement. *See* Certificate of Service in re TRO, ECF No. 1-7. However,

---

[2] *See, e.g.*, Compl. Ex. B at 12 (Eviction Notice describing property removal procedures to be followed in connection with an eviction).

Plaintiff's TRO Motion necessarily fails because—while the balance of harms and equities certainly favors Plaintiff—Plaintiff cannot establish a likelihood of success on the merits. *See Real Truth About Obama, Inc. v. Federal Election Comm'n*, 575 F.3d 342, 347 (4th Cir. 2009) (observing that "each of [the *Winter* factors] must be satisfied as articulated"), *vacated on other grounds*, 559 U.S. 1089 (2010). Specifically, 18 U.S.C. § 2283 (hereinafter "the Anti-Injunction Act") precludes the relief sought, insofar as this Court cannot inject itself into Plaintiff's eviction proceedings.

The Anti-Injunction Act provides that "[a] court of the United States may not grant an injunction to stay proceedings[3] in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 18 U.S.C. § 2283. These "exceptions should not be enlarged by loose statutory construction." *Atlantic C. L. R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 287 (1970). Further, "the Act's prohibition on enjoining state court proceedings applies to any such proceeding pending at the time the federal court acts on the request for injunctive relief, regardless of when the state court action was filed." *Denny's Inc. v. Cake*, 364 F.3d 521, 531 (4th Cir. 2004) (emphasis in original).

Here, Plaintiff is asking this Court to enjoin Defendant from executing the state court's judgment (its writ of eviction) with respect to the unlawful detainer proceedings already litigated to conclusion. *See* Compl. 9 (request for relief); TRO Mot. 1; Compl. Ex. B, ECF No. 1-4 (containing, *inter alia*, the state court records). Plaintiff provides various grounds for

---

[3] The term "proceedings" as to which the Anti-Injunction Act applies "is comprehensive . . . [i]t includes all steps taken or which may be taken in the state court or by its officers from the institution to the close of the final process . . . [and] applies not only to an execution issued on a judgment, but to any proceeding supplemental or ancillary taken with a view to making the suit or judgment effective." *Hill v. Martin*, 296 U.S. 393, 403 (1935); *see also Miller v. Brooks*, 315 F.3d 417, 439 (4th Cir. 2003) (quoting *Hill*, 296 U.S. at 403).

seeking this relief, e.g., that Defendants engaged in bad faith by blocking Plaintiff and/or her third party payor from using the standard "online rent/tenant portal" to bring her balance to zero and thus "exercising [her] legal right of redemption" to avoid eviction, while simultaneously sending her payment reminders via text, which included the online payment portal link. Compl. 6. But these are also arguments that Plaintiff raised before the state court in the pendency of her eviction proceedings. *See* Compl. Ex. B at 9 (Motion for Stay of Eviction Proceedings). That was the appropriate forum for such challenges, as it was the first court with jurisdiction over the property at issue, and the simple fact that Plaintiff did not prevail does not open the door to an emergency parallel proceeding in this Court. *See Tucker v. Specialized Loan Serv'g*, 83 F. Supp. 3d 635, 641–42 (collecting Supreme Court cases to demonstrate how it is well-settled that "the court controlling the property for purposes of the earlier-filed suit has jurisdiction over the property, and the court in which the later equity action was filed lacks jurisdiction to exercise control over that same res").[4]  Accordingly, based on the state court's earlier-exercised jurisdiction over the matter of Plaintiff's unlawful detainer and eviction, the Anti-Injunction Act clearly prohibits this Court's interjection into the proceedings to enjoin Defendant's enforcement of the state judgment.  As such, Plaintiff cannot demonstrate a likelihood of success on the merits of her claim, and injunctive relief—whether temporary or preliminary—is inappropriate in this case.  The TRO Motion will therefore be denied.

### III.  SCREENING OF THE COMPLAINT

When a plaintiff is granted authorization to proceed *in forma pauperis*, the Court is obligated, pursuant to 28 U.S.C. § 1915(e)(2), to screen the operative complaint to determine,

---

[4] The Court further notes that Plaintiff had the ability to appeal any adverse state court judgment and concurrently seek a suspension of the judgment pursuant to Va. Code Ann. § 8.01-676.1(C), which, if granted, would afford substantially the same practical relief Plaintiff now seeks from this Court.

among other things, whether the complaint states a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2) (explaining that "the court shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted"). A *pro se* complaint should survive only when a plaintiff has set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a *pro se* complaint is "to be liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks omitted), such deference "does not mean overlooking the pleading requirements under the Federal Rules of Civil Procedure," *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020). Nor does it require the Court to discern the unexpressed intent of a plaintiff or take on "the improper role of an advocate seeking out the strongest arguments and most successful strategy for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

Pursuant to its statutory screening obligation, the Court has reviewed Plaintiff's Complaint. As discussed in connection with Plaintiff's TRO Motion, Plaintiff's preliminary request for relief is for the Court to inject itself into the eviction process and restore Plaintiff to her possession of her apartment. Compl. 9. For the reasons discussed above, this relief is not available. However, Plaintiff also seeks "damages for the violation of [her] civil rights and the intentional infliction of emotional distress." *Id.* These claims require further scrutiny.

The Court discerns five claims on the face of Plaintiff's Complaint. They are as follows:

Count One: Violation of the Fair Housing Act (FHA), connected to Defendant's purported manipulation of its rent payment portal;

Count Two: Due Process Violation, connected to proceedings in state court;

6

Count Three:  Failure to Accommodate, in violation of the FHA/Americans with Disabilities Act (ADA), connected to Defendant's refusal to delay its scheduled eviction despite Plaintiff's concurrent medical emergency;

Count Four:  Discriminatory Harassment in violation of Plaintiff's civil and disability rights, insofar as Defendant proceeded with the eviction despite witnessing Plaintiff being transported away for emergency medical care; and

Count Five:  Intentional Infliction of Emotional Distress.

*Id.* at 7, 9.

As a preliminary matter, the Court notes that Plaintiff only named TMG Richmond IV, LP ("TMG Richmond") as the sole Defendant in this case. *Id.* at 1–2. Thus, Plaintiff's allegations related to Count Two and the acts of "state actors (the court and sheriff)" cannot state a claim against Defendant TMG, and so necessarily fail. *E.g.*, *Heyns v. U.S. Bank N.A.*, 2020 U.S. Dist. LEXIS 90124, at \*2 n.4 (E.D. Va. Feb. 25, 2020) ("Plaintiff may not attempt to state a cause of action against a person or entity that is not named as a defendant and a party to this action.").

With respect to Count One, as noted by Plaintiff's legal aid attorney, *see* Compl. Ex. B at 26, there is nothing in Virginia law or the FHA that prevents landlords from reasonably restricting the permitted method(s) of payment. Accordingly, the Court does not find that Count One states a valid claim for relief.

Counts Three and Four are arguably duplicative, but generally speaking the Court reads the Complaint to allege that Defendant was obligated by either the FHA or ADA to accommodate Plaintiff's instant, acute medical emergency by delaying the eviction scheduled for May 7, 2026. Unfortunately for Plaintiff, acute medical emergencies are not what either the FHA or the ADA are designed to address. Those statutory schemes protect individuals from discrimination based on their disabled status (or perception thereof). *See* 42 USCS § 12102

7

(ADA definition of protected "disability" status); 42 USCS § 3602(h) (FHA definition of protected "handicap" status).   They do not require accommodations in the face of an isolated, emergency medical event.  *E.g.*, *Clay v. Campbell Cnty Sheriff's Off.*, 2013 U.S. Dist. LEXIS 89974, at *10 (W.D. Va. June 26, 2013) (concluding that a one-time issue that subsequently resolved is not an impairment that substantially limits a major life activity sufficient to state an ADA claim); *Lugones v. Ranger Constr. Indus., Inc.*, 2023 U.S. Dist. LEXIS 222826, at *7 (S.D. Fla. Dec. 14, 2023) ("The Court finds the facts here allege a one-time injury, not an "episodic" impairment within the meaning of 42 U.S.C. § 12102(4)(D).").  And while Plaintiff has conclusorily alleged that she is a disabled individual, the allegations do not support that the incapacitating medical crisis she suffered on May 7, 2026, concurrent with her scheduled eviction, was connected with her alleged disability.  As such, the Court finds that Plaintiff has failed to state a claim in either Count Three or Count Four.

Finally, Plaintiff's intentional infliction of emotional distress claim, cited as a basis for relief, *see* Compl. at 9, and therefore construed as Count Five, fails for lack of any supporting facts.  Indeed, she never mentions emotional distress again, let alone facts to support a finding of intentional infliction thereof.  Accordingly, though it acknowledges the passing reference to a recognized cause of action, the Court must nevertheless find such reference insufficient to state a claim.  *Bell Atlantic Corp.*, 550 U.S. at 555 ("labels and conclusions" cannot satisfy pleading requirements); *Dolgaleva v. Va. Beach City Pub. Schs.*, 364 F. App'x 820, 827 (4th Cir. 2010) (relying on *Atherton v. Dist. Of Columbia Office of Mayor*, 567 F.3d 672, 681–82 (D.C. Cir. 2009) for the proposition that, while *pro se* complaints "must be held to less stringent standards then formal pleadings," "even a pro se complaint must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'").

8

## IV.  CONCLUSION

Based on the foregoing, the Court FINDS that (1) Defendant is not in contempt or engaged in spoliation; (2) the injunctive relief Plaintiff seeks is unavailable, and (3) Plaintiff otherwise fails to state a claim upon which the Court can grant even non-injunctive relief.  The Court will accordingly deny all pending Motions and dismiss the Complaint.  Out of deference to Plaintiff's *pro se* status, however, the Court will give Plaintiff leave to amend, before dismissing the action in its entirety.

An appropriate Order will issue.

/s/
Roderick C. Young
United States District Judge

Date:  May 15, 2026
Richmond, Virginia

9